THE PEOPLE, *ex. rel.* The Overseers of the Poor of Hastings, *vs.* STOWELL.

If the reputed father of a bastard child against whom an order of *filiation* has been made, shall not pay the amount certified for the costs of apprehending him and of the order of filiation, the justices may issue a warrant for his commitment, though he has executed a bond pursuant to § 14 of the statute " concerning the support of bastards."

Where such bond has been given, but the costs are not paid, the warrant should direct the father to be safely kept until discharged by the court of general sessions or *until he shall pay the costs.*

CERTIORARI to a supreme court commissioner to remove proceedings on *habeas corpus.* The writ of *habeas corpus* was directed to a constable of the county of Oswego, who brought Stowell before the commissioner, and returned that he had him in custody by virtue of a warrant of two justices of the peace of said county, a copy of which was annexed to the writ and return. The warrant of the justices was dated January 3, 1845, and recited an order of filiation which had that day been made by the justices, by which Stowell was adjudged

to be the reputed father of a child likely to be born a bastard, of which S. J. T. was pregnant, and by which order Stowell was required to pay certain sums of money for the support of the child and the sustenance of the mother, &c.; and the reasonable costs of apprehending and securing said Stowell and of the order of filiation were certified at $43,11; of which order notice was immediately given to Stowell, and he was required to pay the costs and enter into a bond in the sum of $1000 in pursuance of the statute in such case made and provided: and after further reciting that Stowell had neglected *to pay the said costs*, the officer was commanded to take Stowell and convey and deliver him to the keeper of the common jail of the county, who was required to receive said Stowell into his custody in said jail, and him there safely keep until he should be discharged by the court of general sessions of the peace of the county, or until he should *pay the costs.*

It was admitted by the counsel who appeared before the commissioner to oppose the discharge, that before the warrant was issued, Stowell had duly appealed from the order of the justices to the general sessions, by executing and delivering to the justices a bond for that purpose in pursuance of the statute. But the counsel contended that he was also bound to pay the costs.

The commissioner discharged Stowell from custody under the warrant upon two grounds: *first*, because he had executed a bond for the appeal in pursuance of the statute, and to the satisfaction of the justices; upon the execution of which the statute says the person shall be discharged: and *second*, the *mittimus* requires the jailer to keep him until he shall be discharged by the court, or until he shall *pay the costs*, instead of, until he shall *execute a bond*, as the statute directs it to be.

*R. H. Tyler*, for the overseers of the poor, cited *Edwards Treat.* 351, 3d ed.; *Barbour Cr. Law*, 668, 9.

*James Crombie*, for Stowell.

The People v. Stowell.

*By the Court,* Bronson, Ch. J. The statute provides in express terms, that the person adjudged to be the reputed father shall, upon notice of the order, immediately *pay the amount certified for the costs* of apprehending him, and of the order of filiation; *and* shall enter into a bond with one of two specified conditions. And further, that if he refuse or neglect to execute a bond, *or to pay the costs,* he shall be committed by the justices. (1 *R. S.* 645, §§ 14, 15.) It is true that the 15th section commences by saying, that "upon such bond being executed to the satisfaction of the justices, they shall discharge such person from his arrest;" and it concludes by declaring that when committed to prison he shall remain there until discharged by the court of general sessions, "or until he shall execute such bond:" and in neither of those places is any thing said about costs. But every statute must, if possible, be so construed that there will be harmony in all its provisions; and that can be done in this case. The words "such bond," in both places where they occur, must be understood of a bond preceded or accompanied by the payment of costs. This reading, while it does no violence to the language of the statute, will give effect to the manifest intention of the legislature. The party may be committed either for the want of a bond, or for the non-payment of costs, as well as where there is neither bond, nor the payment of costs.

As the party may be committed on different grounds, and as the statute does not prescribe the form of the warrant of commitment, I see no reason why it may not be adapted to the nature of the case, as was done in this instance.

Proceedings reversed.