## THE PEOPLE *vs.* JAYNE and others.

Where a bond is given, upon an adjournment of an examination in a case of bastardy, conditioned for the appearance of the person charged, at the adjourned day, such person is bound not only to appear, but to give his continued attendance until the examination and subsequent proceedings are finally closed.

If after appearing at the place of examination, the accused, before the proceedings are closed, departs therefrom without leave, and goes to his home and remains absent until the next morning, and is not present when the order of filiation is made, this amounts to a breach of the bond.

Such breach will not be healed or cured by the return of the accused, after the order of filiation has been made, and offering to the justices to submit himself to imprisonment in jail, upon their warrant, as for a refusal or neglect to give the bond required by statute, upon notice of an order of filiation.

THIS is an action brought upon a bond executed by the defendant Jayne as principal, and by the other defendants as sureties, and was given on the adjournment of an examination in a case of bastardy. The defendant Jayne was arrested on a warrant issued by E. P. Mulford, Esq., a justice of the peace of Steuben county, on a complaint before him, charging said Jayne with being the father of a child likely to be born a bastard, of which one Eliza Yost was then pregnant. On the defendant Jayne's being brought before him, the magistrate issuing the warrant called to his aid Stephen Aldrich, Esq., another magistrate of the same county, and was about to proceed with the examination, when the defendant applied for an adjournment. The application was granted by the magistrates, upon the execution by the defendant of a bond in the penalty of six hundred dollars with sufficient surety. The bond in question was then executed by Jayne as principal, and the other defendants as sureties. The examination was thereupon adjourned until the 5th of May thereafter. On the adjourned day the parties appeared ; the superintendent and overseer of the poor, by their counsel, and the defendant Jayne in person and by counsel. The examination was proceeded with, the witnesses were examined, and the testimony closed. The counsel on both sides summed up, and the case was submitted to the justices. The justices took a recess for tea. During the recess the defendant Jayne, without the leave of the court, left. After tea, and in the course of half an hour, the justices came together, and after deliberating upon the matter, made an order of filiation against the defendant Jayne, he having been adjudged to be the father of the child in question. He was called several times by the justices, after the recess, and before and after the adjudication, but failed to appear. The justices remained together until 10 o'clock, and then dissolved the court. The next morning the defendant Jayne, with his sureties, offered to the justices to surrender Jayne to them. The justices declined doing any thing in the premises, on the

ground that the court organized for the examination had been dissolved, and that they had no further jurisdiction in the matter. This action was brought on the bond. It came on to be tried at the Steuben county circuit in June, 1857. After hearing the testimony his honor, the judge, ordered a judgment in favor of the plaintiffs, subject to the opinion of the court, on a case and exceptions.

*John Maynard,* for the plaintiffs.

*L. B. Van Valkenburgh,* for the defendants.

*By the Court,* JOHNSON, J. There is no force in the point first raised by the defendants' counsel, that the complaint does not state facts sufficient to constitute a cause of .action, if the bond was valid, and all its conditions binding upon the defendants. But it is also insisted on behalf of the defendants, that the justices before whom the defendant Jayne was brought could only take a bond for his appearance, at the adjourned day, and had no power or authority to require, or take, as a further condition of such bond, that he should not depart without leave. This position cannot be maintained. It would require a construction of the statute so strict and literal as to defeat its whole object and intent. The statute, (1 *R. S.* 644, § 11,) requires the examination touching the paternity of the child, and on which an order of filiation can alone be founded, to be made in the presence of the person so charged or apprehended. The justices have no authority to make such examination in his absence, and if they should they clearly could found no valid order of filiation upon it. Whenever the examination is made, whether at the time the person charged is first brought before the magistrate issuing the warrant, or at the adjourned day, it is to be made in the same manner. And the statute, in either case, contemplates that such person shall be present until the final determination of the proceedings. In case there is no adjournment he is to

remain in the custody of the officer during the examination and until he shall be discharged. (§ 17.) If the examination is adjourned, the justices are to take a bond for his appearance at the adjourned day, (§ 12,) the penalty of which, must be in such a sum as shall be deemed a full indemnity for the expense of supporting such bastard and its mother. (§ 16.) The object of this plainly was, that in case the person so charged should defeat an examination, and final order, by reason of his non-appearance, or non-attendance at the adjourned day, the public might be fully indemnified and secured against the support of the child. The policy of the statute looks, not so much to finding out who is the father of the child, as it does to providing for its support, and relieving the public from the burthen. And it inquires into and determines the former, only for the purpose, and as the means, of securing the latter.

The bond is intended to secure the appearance and presence of the person charged, at the adjourned day, as fully as it is secured by the warrant and arrest, upon an examination without adjournment. It is preposterous, as it seems to me, to suppose that the object and intent of the statute would be fulfilled by the momentary appearance of such person on the adjourned day, even though he might at once disappear, and remain away, or abscond, as he should see fit. The statute must receive such construction as will fulfill its plain object and intention. The obvious meaning and intention are as much a part of the statute as though expressed in ever so plain and explicit terms. The *appearance*, therefore, before the justices at the adjourned day, provided for by statute, must be held to mean, not his temporary appearance merely, but his continued appearance, and attendance, until the examination and subsequent proceedings are finally closed. This does no violence to the language, and gives full effect to the manifest will, of the legislature. (*The People* v. *Stowell*, 2 *Denio*, 127.) This part of the condition was, therefore, an essential part of the obligation, and was binding upon all the

defendants.  It is entirely clear, from the evidence, that Jayne departed from the place where the examination was held, without leave, and went to his home, which was from a mile and a half to two miles distant, through the woods, and twice that distance by the highway ; and that he was not at the place of the examination, and did not answer, when the justices closed their proceedings, although repeatedly called by them.  It also appears clearly and without any contradiction, that when the evidence upon the examination was closed, the justices took a recess for tea, and that Jayne was then informed, by one of them, that he must not depart, as they intended to return soon, and finish the proceedings that evening.  The justices, on reassembling after tea, determined from the evidence that Jayne was the putative father, and made the order of filiation, and Jayne not appearing, adjourned finally, and without day.  They remained in session awaiting Jayne's return, and deliberating what course they ought to take in the premises, until ten o'clock in the evening, before finally adjourning.  This departure and continued absence of Jayne, without leave, was, I think, a clear breach of the condition of the bond.  It is perfectly immaterial, in my judgment, for what purpose, or with what intent, he left.  It is enough that he departed voluntarily, and was not present to answer, and receive notice of the order when it was made.  It is no answer to say that he intended to return and did return the next morning.  He could not, to suit his own convenience, compel the magistrates to remain in session, or to adjourn over until another day.  And there is nothing in the evidence to justify the supposition that the justices designed to take any advantage of Jayne's temporary absence.  It is quite evident from the whole testimony that the justices did not know, or suppose, that he intended to return in the morning or at any other time.  But, however this may be, it does not, as I conceive, affect the question of the breach, under the circumstances of the absence in this case.  It is clear that he was not present, and did not appear, when his bond required him

to be there. He was not present, either actually or construct-ively; as there can be no pretense that he intended returning, even if he intended to return at all, until the next day. The justices had the right to adjourn as, and when, they did. He had absented himself at his peril, and could not require the justices to follow him, or to remain in session until it might suit his convenience to return, for the purpose of giving him notice of the order they had made. This breach was in no respect healed or cured by the return of Jayne, the next morn-ing, to the place, and his offer to the justices to submit him-self to imprisonment in the county jail upon their warrant, as for a refusal or neglect to give the bond required by statute, upon notice of an order of filiation. The justices supposed that, having completed the examination, and made out the order, and adjourned without further day, their power in the premises was at an end; and they had no right to get together again, either for the purpose of taking the bond authorized by § 14 of the act, or of issuing their warrant for a neglect or refusal to give such bond. I am inclined to the opinion, however, that they still had the power to take such bond, or to issue such warrant, if they had seen fit to exercise it. In performing this duty they did not act strictly and technically as a court, but as justices, and their powers were not spent until they had done all that the statute authorized them to do in the case. This necessarily includes the power on their part to waive a breach of the bond taken on the adjournment, on behalf of the people. And this power, I think, they pos-sess, and may exercise, in furtherance of justice, and of the ultimate remedy contemplated by the statute. But whether this be so or not, it is clear, I think, that they were in no re-spect bound to exercise it in favor of the defendants. The latter had no right to require the magistrates to assume what they regarded as spent, or doubtful powers, to relieve them from the consequences of the default of Jayne.

There is more doubt, I think, whether the justices could proceed and determine who was the father of the child, and

make a valid order of filiation, after Jayne had absented himself. But as this was after the evidence on the examination was through with, I think the order was valid. This, however, is not material, as I view the case. If it was valid, Jayne was in default in not being there to receive it, or notice of it, when it was made; and if it was invalid it worked no injury to the defendants. The proof that the order was made, was called out by the defendants. There was no error in refusing to receive the evidence of what Jayne's counsel had told him, in respect to his right to leave and go home. The advice could not affect the question of his right to absent himself, nor could his intention to return, if he entertained it. The evidence allowed from the justice, Mulford, that he told Jayne not to leave, as they should finish the matter that evening, was material upon the issue on which the case turned. It went clearly to show that Jayne had departed without leave. But if not material, in no possible view could it have injured the defendants, as the verdict was ordered subject to the opinion of the court, wholly irrespective of the question of Jayne's intention in departing. And it is now apparent that Jayne's intention neither aided nor prevented a breach. On the undisputed facts, therefore, the plaintiffs are entitled to judgment. There was no disputed question of fact which was at all material, to submit to a jury. The bond being for the appearance of the defendant Jayne, the judgment must be for the whole penalty of the bond. (*The People* v. *Tilton*, 13 *Wend.* 597.)

Judgment ordered accordingly.

[MONROE GENERAL TERM, March 1, 1858. *Johnson, T. R. Strong* and *Smith*, Justices.]